UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JONATHAN STRONG                           *        CIVIL ACTION NO. 11-392
derivatively on behalf of Tidewater, Inc. *
              Plaintiff                    *
                                           *        SECTION: H
VERSUS                                     *        JUDGE JANE TRICHE MILAZZO
                                           *
DEAN E. TAYLOR, ET AL                      *
              Defendants                   *        MAGISTRATE: 5
                                           *        MAG. ALMA L. CHASEZ
and                                        *
TIDEWATER, INC.                            *
              Nominal Defendant            *
                                           *
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## ORDER AND REASONS

Before the Court is Nominal Defendant Tidewater, Inc's ("Tidewater") Motion to Dismiss (Doc. 29) and Defendants' Dean E. Taylor, Stephen W. Dick, Joseph M. Bennet, Kevin Carr, R.A. (Rich) Patarozzi, M. Jay Allison, James C. Day, Richard Du Moulin, Morris E. Foster, J. Wayne Leonard, Jon C. Madonna, Joseph H. Netherland, Nicholas J. Sutton, Cindy B. Taylor and Jack Thompson (collectively, "Individual Defendants") Motion to Dismiss (Doc. 32).

1

For the following reasons, Nominal Defendant Tidewater, Inc's ("Tidewater") Motion to Dismiss (Doc. 29) is hereby **GRANTED**. Individual Defendants' Dean E. Taylor, Stephen W. Dick, Joseph M. Bennet, Kevin Carr, R.A. (Rich) Patarozzi, M. Jay Allison, James C. Day, Richard Du Moulin, Morris E. Foster, J. Wayne Leonard, Jon C. Madonna, Joseph H. Netherland, Nicholas J. Sutton, Cindy B. Taylor and Jack Thompson Motion to Dismiss (Doc. 32) is hereby **GRANTED**.


**BACKGROUND**

Tidewater is a company incorporated in Delaware, but maintains its worldwide headquarters and principal executive offices in New Orleans, Louisiana. Tidewater renders offshore service vessels and marine support services to the global offshore energy industry. Tidewater provides these services in support of all phases of offshore exploration, field development, and production. Tidewater Marine International, Inc. ("TMII") is a wholly-owned subsidiary of Tidewater. Tidewater does business in Nigeria and Azerbaijan through TMII.

Plaintiff alleges that Tidewater, via TMII, violated the Foreign Corrupt Practices Act ("FCPA") by paying $160,000 in bribes to officials in Azerbaijan to resolve tax audits in Tidewater's favor, while knowing that some or all of the money would be paid to Azeri tax officials. (Doc. 1, ¶5.) These bribes were falsely identified as legitimate expenses, such as tax payments and travel expenses. (Doc. 1, ¶42.) Plaintiffs allege that the bribery took place in 2001, 2003 and 2005 when the Azeri Tax Authority initiated tax audits of TMII's business operations in Azerbaijan. (*Id.*)

Plaintiff further states that Tidewater paid approximately $1.6 million in bribes to the

Nigerian Customs Service to induce Nigerian officials to disregard customs regulations regarding the importation of vessels into Nigerian waters.  (Doc. 1, ¶5.)  Plaintiffs allege that this activity took place from approximately January of 2002 through March of 2006. (Doc. 1, ¶70.) Further, Plaintiffs note that none of Tidewater's financial statements during the relevant period filed with the SEC described the bribes or the purposes of the reimbursements.  (Doc. 1, ¶75.)

In November 2010 Tidewater settled with the Securities and Exchange Commission ("SEC"), paying $8,104,362.00 in disgorgement and pre-judgment interest. (Doc. 1, ¶7.) Also in November, 2010 Tidewater entered into a Deferred Prosecution Agreement ("DPA") with the United States Department of Justice ("DOJ").  (Doc. 32-7).[1]  TMII paid a $7.35 million penalty as a part of the Deferred Prosecution Agreement.  (*Id.*)

Plaintiff Jonathan Strong ("Strong") brought this shareholder derivative suit on February 16, 2011 arising from these violations of the FCPA and the Securities Exchange Act of 1934 ("Exchange

---

[1]

"[w]hen considering a Rule 12(b)(6) motion, a court may consider documents outside the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims."  *Maloney Gaming Management, L.L.C. v. St. Tammany Parish*, 456 Fed. Appx. 336, 340-341 (5th Cir. 2011). Moreover, it is permissible to consider documents unattached to the complaint when they are attached to the motions to dismiss, referred to in the complaint, and central to the plaintiffs' claims. *Id.; See also Tellabs, Inc. v. Makor Issues & Rights*, Ltd., 551 U.S. 308, 322 (2008) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice").  While not specifically referencing the DPA, Plaintiff's Complaint highlights much of its substance.  (Doc. 1, ¶¶5-7, 25-96.)  The DPA is, however, attached to the Individual Defendants' Motion to Dismiss and referenced specifically in Plaintiff's Opposition to Defendants' Motion. (*See* Doc. 32 and Doc. 37.)  Thus, this Court finds that it may depend upon the DPA in analyzing Defendants' Motions to Dismiss.

Act"). Strong, a shareholder in Tidewater since 1999, brought this action against the officers and members of the Board of Directors of Tidewater alleging that they breached their fiduciary duties in that they: (1) knew or recklessly disregarded the fact that employees, representatives, agents and/or contractors were paying, had paid and/or had offered to pay bribes to Azerbaijani and Nigerian government officials to obtain favorable treatment for Tidewater (Doc. 1, ¶2.); (2) caused Tidewater to pay bribes and to disguise the bribe payments as legitimate expenses in Tidewater's books and financial disclosures (Doc. 1, ¶6); and (3) failed to maintain adequate internal controls to ensure compliance with the FCPA and Exchange Act (Doc. 1, ¶3). As a result of these actions, Plaintiff alleges that, in addition to the multi-million dollar penalties, Tidewater has suffered damages to its goodwill and reputation and has incurred significant expenses in connection with investigating illegal activities. (Doc. 1, ¶8.)

This shareholder derivative action seeks to recover damages on Tidewater's behalf against the Defendants for breaches of fiduciary duties, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment. (Doc. 1, ¶9.) Additionally, Plaintiff seeks injunctive relief in relation to Tidewater's implementation and administration of a system of internal controls and accounting systems sufficient to satisfy the requirements fo the FCPA. (Doc. 1, ¶40.)

On September 1, 2011 Individual Defendants filed a Motion to Dismiss. (Doc. 32.) Tidewater filed a Motion to Dismiss adopting the arguments in Defendants Motion to Dismiss. (Doc. 29.) Plaintiff subsequently filed an opposition to both Motions (Doc. 37) and Defendants filed a Reply brief (Doc. 40).

4

**LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is "plausible on its face" when the pleaded facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir.2009). The Court need not, however, accept as true legal conclusions couched as factual allegations. *Iqbal*, 129 S.Ct. at 1949–50.

To be legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true. *Id*. The complaint must contain enough factual allegations to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand*, 565 F.3d at 255–57. If it is apparent from the face of the complaint that an insurmountable bar to relief exists, and the plaintiff is not entitled to relief, the court must dismiss the claim. *Jones v. Bock,* 549 U.S. 199, 215 (2007).

**LAW AND ANALYSIS**

Individual Defendants Motion to Dismiss argues two reasons as to why the law precludes Strong's shareholder derivative action. First, they assert that Plaintiff did not make a formal demand on the Tidewater board prior to filing suit as the Federal Rules of Civil Procedure and

Delaware law require.  While Plaintiff may show that his failure to make a demand is excused, Defendants argue that he has not plead "demand futility" with particularity.

Second, Defendants argue that the Plaintiff may not shift to Defendants the burden of disgorgement and penalties the federal regulatory authorities chose to impose upon Tidewater, and that it agreed to pay.  They assert that the statutes under which the government sought and obtained remedies against Tidewater, the Exchange Act and the FCPA, do not authorize shifting of payment and that public policy precludes it.  Additionally, they allege that the state law theories of liability by which Plaintiff attempts to circumvent this prohibition are preempted.

After assessing the record the Court finds that Plaintiff did not adequately plead demand futility as is required under the Federal Rules of Civil Procedure.  Due to the Court's dismissal of Plaintiff's action based on these grounds, *see infra.* A, the Court declines to entertain the second argument made by the Defendants at this time.


A. DEMAND ON THE BOARD

Defendants assert that the allegations that Plaintiff makes do not rise to the level to excuse demand on the Board prior to filing suit.  Defendants argue that Plaintiff fails to allege particularized facts specific to each Director Defendant thereby failing to demonstrate that a majority of the Board is not independent and disinterested.  Additionally, Plaintiff fails to state particularized facts excusing demand based on each Director Defendant's knowledge of books and records or disclosure violations.  They further allege that the Plaintiff fails to assert particularized

facts excusing demand based on a fiduciary duty of oversight.

Plaintiff argues that demand was futile because, as Plaintiff's Complaint articulates, the Defendants face a significant likelihood of liability and lack independence for failing to maintain adequate controls and from their knowledge of the FCPA violations and violations under the Exchange Act.  Specifically, Plaintiff notes that Defendant Taylor has substantial liability under the Sarbanes Oxley Act ("SOX").  Plaintiff concludes that the Defendants lack a legal and factual basis to escape a finding of demand futility.

### I. Shareholder Derivative Suits and Demand Futility

Shareholder derivative suits authorize individual shareholders of a corporation to file suit on the corporation's behalf as "[a] means to protect the interests of the corporation from the misfeasance and malfeasance of faithless directors and managers." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95 (1991) (internal citations omitted).  "To discourage abuse of this remedy, courts require that shareholders who wish to initiate a derivative action must first 'demonstrate that the corporation itself had refused to proceed after suitable demand, unless excused by extraordinary conditions.'"  *Hanson v. Odyssey Healthcare, Inc.*, No. 04-CV-2751-N, 2007 WL 5186795, at *2 (N.D. Tex., Sep. 21, 2007) (*citing Kamen*, 500 U.S. at 95).  This demand requirement is illustrated in Rule 23.1 of the Federal Rules of Civil Procedure.  Specifically, Rule 23.1(b)(3) provides that the complaint must state with particularity:

> (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and

(B) the reasons for not obtaining the action or not making the effort.

Fed. R. Civ. P. 23.1 (2012).

To satisfy the demand requirement of Rule 23.1, a shareholder plaintiff must allege that he made a demand on a corporation's board or why such a request would have been futile. *Id.* Thus, because Strong failed to make demand on Tidewater's board of directors before bringing suit, he can proceed with this derivative action only if he adequately pled that such a demand would have been futile.

The Supreme Court in *Kamen* stated that "[a] court that is entertaining a derivative action under [the Investment Company Act of 1940] must apply the demand futility exception as it is defined by the law of the State of incorporation." *Kamen* at 108-109. Other Courts within this Circuit have held that this standard applies to derivative actions generally. *See, e.g., Engel v. Sexton*, Nos. 06–10447, 06–10547, 07–116, 2009 WL 361108, at *1 (E.D. La., Feb. 11, 2009); *Guitierrez v. Logan*, No. H-02-1812, 2005 WL 2121554, at *3 (S.D. Tex., Aug. 31, 2005). Tidewater is incorporated in Delaware. Thus, Delaware substantive law will apply.[2]

Under Delaware law, a plaintiff who initiates a derivative action must either demand that the corporate board take up the litigation itself or demonstrate that such a demand would be futile. *Rales v. Blasband*, 634 A.2d 927, 932 (Del. 1992); *Aronson v. Lewis*, 473 A.2d 805, 811, 814 (Del. 1984), *reversed in part on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000). As

---

[2]All parties agree that Delaware substantive law shall apply. (*See* Doc. 32-1, p. 15; Doc. 37-3, p. 6.)

noted earlier, it is uncontested that Strong did not make a demand on Tidewater's board.  Thus, this Court must determine whether the plaintiff has set forth particularized facts that the directors were incapable of making an impartial decision regarding the pursuit of the litigation.  *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*,  845 A.2d 1040, 1048 (Del. 2004) *(citing Rales*, 634 A.2d at 932).

It is presumed that when directors of a corporation make a business decision they act on an informed basis, in good faith and with the honest belief that the action taken was in the best interest of the company.  *Aronson*, 473 A.2d at 812.  The burden is on the plaintiff in a derivative action to overcome this presumption.  *Beam,* 845 A.2d at 1049.  Moreover, a plaintiff must allege particularized facts that create a reasonable doubt of a director's independence to rebut this presumption.  *Id.* (citing *Rales,* 634 A.2d at 934).  "If the Court determines that the pleaded facts create a reasonable doubt that a majority of the board could have acted independently in responding to the demand, the presumption is rebutted . . . and demand will be excused as futile."  *Id.*

In determining demand futility the Court may only permit suit by a stockholder who is able to articulate particularized facts showing that there is reasonable doubt either that: (1) the directors are disinterested and independent or (2) the challenged transaction was otherwise the product of a valid exercise of business judgment.  *See, e.g., Aronson* 473 A.2d at 814; *Grimes v. Donald*, 673 A.2d 1207, 1217 (Del. 1996); *Brehm v. Eisner*, 746 A.2d 244, 255 (Del. 2000).  " These prongs are disjunctive. Therefore, if either prong is satisfied, demand is excused." *Brehm*, 746 A.2d

at 256.  This test is known as the *Aronson* test.

In certain circumstances, including cases in which no board decision was made, *Aronson* does not apply, and the standard of futility is governed by the test set forth in *Rales v. Blasband*, 634 A.2d 927 (Del. 1993).  The *Rales* court held that in three principal scenarios a different analysis must be performed.  These scenarios are:

> (1) where a business decision was made by the board of a company, but a majority of the directors making the decision have been replaced; (2) where the subject of the derivative suit is not a business decision of the board; and (3) where . . . the decision being challenged was made by the board of a different corporation.

*Rales*, 634 A.2d at 934.  "It is appropriate in these situations to examine whether the board . . . could impartially consider [the merits of the demand] without being influenced by improper considerations."  *Id.*  Thus, the Court's ultimate determination must be whether or not the Complaint creates a reasonable doubt that the board of directors could have properly exercised independent and disinterested business judgment in responding to the demand.  *Id.*  This inquiry focuses on the board of directors that is in place at the time the Complaint is filed.  *Id.*  This test is known as the *Rales* test.  When a plaintiff challenges an inaction by a board, the *Rales* test is the appropriate one to perform.

Notably, while the *Rales* test looks different than the *Aronson* test, "upon closer examination . . . that singular inquiry makes germane all of the concerns relevant to both the first and second prongs of *Aronson*."  *Guttman v. Huang, et al*, 823 A.2d 492, 501 (Del.Ch. 2003).  Ultimately, both the *Rales* test and the *Aronson* test are guided by similar concerns as to whether the directors can impartially consider a demand.  *See Guttman*, 823 A.2d at 501.

The parties in this case disagree as to which test is applicable.  Defendants assert that the *Rales* test is appropriate as the subject of this suit is not based on a business decision by the board.  On the other hand, Plaintiff asserts that the *Aronson* test is appropriate as he does challenge specific actions of the Board and that the *Aronson* test applies when a board consciously fails to act in the face of known violations or a high probability of misconduct as is the case here.

A review of the Complaint reveals that the majority of Plaintiff's allegations relates to the Individual Defendants' failures to maintain adequate internal controls and/or compliance programs.  (Doc. 1, ¶¶ 3, 33-34, 41, 109-110, 112, 116-117, 119-122, 127-128, 131, 142.)  These allegations would be guided by the *Rales* test.  On the other hand, some of Plaintiff's Complaint could be construed as a "decision of the board."  The allegations that the Individual Defendants made no effort to enforce Tidewater's anti-bribery policies, that the bribes were "blessed" by Tidewater's headquarters and that false and misleading financial statements were filed could support the contention that the board knowingly made decision(s) to not address certain problems.  In this case *Rales* is inapplicable.  *See In re Abbott Labs. Deriv. S'holder Litig.*, 325 F.3d at 806.

While this Court believes all of Plaintiff's Complaint could be analyzed under the *Rales* test, in an abundance of caution it will analyze the Complaint under both tests.  In the end this Court finds that Plaintiff's demand upon the board would not have been futile.

### II. The First Prong of Aronson and the Rales Test: Director Interest and Independence

If particularized facts alleged create a reasonable doubt that a majority of the directors are disinterested and independent, then demand is excused under either the *Rales* test or the first prong of *Aronson*. *See Khanna v. McMinn,* No. Civ.A. 20545-NC, 2006 WL 1388744, at *12 (Del. Ch. May 9, 2006) The Court finds that there is not a reasonable doubt that a majority of directors are disinterested and independent and therefore demand is neither excused under the *Rales* test or the first prong of the *Aronson* test.

    a) <u>Interest</u>

"Interest can be shown when a director will receive a personal benefit from a transaction not shared equally by the remaining shareholders, and also when a personal benefit or detriment may go to the director as a result of the decision to pursue litigation." *Robotti & Co., LLC v. Liddell*, No. 3128-VCN, 2010 WL 157474, at *12 (Del. Ch., Jan. 14, 2010) (citing *Beam*, 845 A.2d at 1049 and *Rales,* 634 A.2d at 936). Conversely, disinterested "[m]eans that directors can neither appear on both sides of a transaction nor expect to derive any personal financial benefit from it in the sense of self-dealing, as opposed to a benefit which devolves upon the corporation or all stockholders generally." *Aronson*, 473 A.2d at 812.

> In the demand excusal context, [the Courts have] required that the plaintiff do more than allege that the director is interested because he or she received a benefit or detriment not shared or incurred by the stockholders generally; instead the plaintiff must allege that this interest is material to that director. Thus, the plaintiff must show that the alleged benefit was significant enough in the context of the director's economic circumstances, as to have made it improbable that the director could perform [his or her] fiduciary duties to the shareholders without being influenced by [his or her] overriding personal interest.

*Robotti & Co, LLC*, 2010 WL 157474, at *12 (internal citations omitted). Ultimately, when no

director stands on both sides of the transaction or receives any personal financial benefit from the transaction, there is no issue regarding the directors' interest in the deal. *See In re J.P. Morgan Chase & Co.*, 906 A.2d 808, 821 (Del. Ch. 2005), *judgment aff'd on other grounds*, 906 A.2d 766 (Del. 2006).

There are several areas of the Complaint that <u>may</u> implicate the interest of Tidewater's board.  This Court finds that not one of the naked assertions in the Complaint meet either the particularity standards or indicate that a majority of directors had a material interest in the transactions.

First, the Complaint states that the Individual Defendants "have and will continue to receive substantial remuneration from Tidewater.  The acts complained of herein have resulted in short-term economic benefits to Tidewater (as well as to the Individual Defendants through their increased and continued compensation)."  (Doc. 1, ¶123.)  Second, the Complaint notes that the Individual Defendants did not enforce anti-bribery policies and turned a blind eye to the bribes because the revenues that were derived from the bribery were worth more than the costs of any fines it would have to pay to the DOJ and/or the SEC if Tidewater were to be caught in violation of the FCPA.  (Doc. 1, ¶109.)  Lastly, the Complaint asserts that the Individual Defendants course of conduct has demonstrated their unwillingness and/or inability to comply with their fiduciary duties. (Doc. 1, ¶120.)

Even taken as true, these statements do not indicate that any of the board stood on either side of the bribes or benefitted personally and materially from the bribes.  These conclusory

allegations neither meet the particularized requirements under Rule 23.1 nor meet the standard for showing that a majority of the board was materially interested in the transactions. *See White v. Panic*, 783 A.2d 543, 549 (Del. 2001) ("[A]t the motion to dismiss stage of the litigation plaintiffs are entitled to all reasonable factual inferences that logically flow from the particularized facts alleged, but conclusory allegations are not considered as expressly pleaded facts or factual inferences.")  Additionally, while interest exists where a corporate decision will have a material impact on a director, but not on the corporation and the stockholders, *Rales,* 634 A.2d at 936, Plaintiff makes no distinction as to the differential impact on the board versus the corporation and/or the stockholders.

Plaintiffs argue that directors who knowingly causes the company to issue false and misleading statements to shareholders may be considered to be interested for purposes of demand.  (Doc. 34-3, p. 14.)  It is evident that "shareholders are entitled to honest communication from directors, given with complete candor and in good faith."  *In re INFOUSA, Inc. S'holders Litig.*, 953 A.2d 963, 990 (Del. Ch. 2007).  When communications depart from this standard and it can be shown that directors issued "[c]ommunication with the knowledge that it was deceptive or incomplete, [the directors have] violate[d] the fiduciary duties that protect shareholders."  *Id.* What is glaringly missing from Plaintiff's Complaint are any allegations that any one of the Individual Defendants knowingly made a deceptive or incomplete communication to its shareholders.  While this Court takes as truth that bribe payments were designated as legitimate payments, that these payments were consolidated into financial disclosures filed with the SEC and

14

that 10-Q and 10-K forms were signed by Defendant Taylor for purposes of SOX, nowhere do Plaintiffs allege that any one of the Defendants, including Defendant Taylor, knowingly made a deceptive or incomplete communication.   Thus, this argument falls woefully short of the requirements under Rule 23.1.

Ultimately, this Court finds that the Complaint is completely devoid of any allegations of an interested director.  There is no allegation that any director appeared on both sides of a transaction or expected to derive a personal financial benefit from it.   Nowhere in the Complaint can it be found that any one of the directors, much the less a majority of them, benefitted from the bribes themselves, benefitted from failing to establish and maintain adequate internal controls, benefitted from enforcing policies and programs designed to prevent violations, benefitted from improperly recorded payment of bribes in Tidewater's books and records or benefitted from inadequately training their employees, agents, representatives and/or contractors with respect to compliance with the FCPA.

b) Independence

Independence means that "a director's decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences." *Aronson*, 473 A.2d at 816.  "Independence is a fact-specific determination made in the context of a particular case." *Beam*, 845 A.2d at 1049.  Plaintiff complains that the board is not independent due to the personal and business relationships among the directors.  (Doc. 1, ¶120.)

Vague allegations of personal or business relationships and alliances among the directors

are insufficient to overcome the demand requirement.  *See, e.g., Citron on Behalf of United Techs. Corp. v. Danielle*, 796 F.Supp. 649 (D.Conn. 1992) (demand was not excused under Delaware law where plaintiffs failed to allege any specific personally committed acts or direct and immediate involvement in wrongdoing on part of directors); *Amalgamated Bank v. Yost*, No. Civ.A. 04-0972, 2005 WL 226117, at *9 (E.D.Pa. Jan. 31, 2005) (applying Del. law) (conclusory allegations of personal and professional relationships are insufficient to raise a reasonable doubt as to directors independence).  Ultimately, personal relationships must be accompanied by "[s]erious allegations that would lead to reasonable doubt as to a director's independence."  *Beam*, 845 A.2d at 1052.

Plaintiff alleges that the Individual Defendants have developed professional relationships, are friends and have entangled financial alliances, interests and dependencies.  (Doc. 1,  ¶120.) This statement is the only one in the Complaint concerning these relationships.  Nowhere are there particular facts indicating these relationships, alliances, interests or dependencies.  "Allegations of mere personal friendship or mere outside business relations, standing alone, are insufficient to raise a reasonable doubt about a director's independence," *Beam*, 845 A.2d at 1050.  This bald assertion is completely insufficient to raise a reasonable doubt as to whether any one of the directors could have independently considered demand.

In conclusion, demand was not excused under the first prong of the *Aronson* test or the *Rales* test.  No reasonable doubt has been raised that a majority of the board had the ability to disinterestedly and independently consider demand.  Thus, Plaintiff fails to meet this burden.

### III. *Rales Considerations*

The *Rales* test requires a court to examine whether the board could impartially consider the merits of the demand without being influenced by improper considerations. *Rales*, 634 A.2d at 934. In addition to a court making an analysis of the interest and independence of the directors, *see Infra.* II, many courts also consider whether the majority of directors face a substantial likelihood of personal liability. Under *Rales* the Court may also examine whether a board has violated its duties by failing to exercise oversight or by failing to act.

a) Substantial Likelihood of Personal Liability

Under *Rales*, the Court must "determine both whether a corporate board on which demand might be made is disinterested and independent, and whether a majority of directors face a substantial likelihood of personal liability." *David B. Shaev Profit Sharing Account v. Armonstrong*, No. Civ.A. 1449-N, 2006 WL 391931, at *4 (Del. Ch. Feb. 13, 2006), *judgment aff'd*, 911 A.2d 802 (Del. 2006).

The bulk of Plaintiff's allegations that demand on the board would be futile revolve around the directors supposed substantial likelihood of personal liability. Specifically, Plaintiff alleges that the Individual Defendants face substantial liability (1) based on their knowledge of Tidewaters FCPA violations (Doc. 1, ¶¶109-118); (2) based on their failure to maintain adequate internal controls (Doc. 1, ¶¶119-123); (3) due to violations of the Exchange Act (Doc. 1, ¶¶124-128); and (4) by commencing a derivative action (Doc. 1, ¶¶133-135). As to Defendant Taylor, Plaintiff alleges that he faces a substantial likelihood of liability under SOX. (Doc. 1, ¶¶129-132.)

A plaintiff "[c]an raise a reasonable doubt about a given board member's interest in the pending litigation by showing that the action will expose that member to potential personal liability." *Midwestern Teamsters Pension Trust Fund v. Baker Hughes Inc.*, No. H-08-1809, 2009 WL 6799492, at *6 (S.D.Tex. May 7, 2009) (citing *In re INFOUSA*, 953 A.2d at 990; *Rales*, 634 A.2d at 936; *Aronson*, 473 A.2d at 815). "The mere threat of personal liability, however, is insufficient to render a director interested in a given transaction." *In re INFOUSA*, 953 A.2d at 990. A plaintiff's allegations of impartiality only raise reasonable doubt when a substantial likelihood of personal liability exists. *Wood v. Baum*, 953 A.2d 136, 141 n.11 (Del. 2008). Thus, demand will be excused based on personal director liability only in the **rare** case when a plaintiff is able to show that director conduct is so "[e]gregious on its face that board approval cannot meet the test of business judgment, and a substantial likelihood of director liability therefore exists." *In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 121 (Del.Ch. 2009) (quoting Aronson, 473 A.2d at 815).

Plaintiff alleges that the Individual Defendants made no effort to enforce anti-bribery policies and turned a willful and blind eye to the bribes funded and paid for by Tidewater. Plaintiff claims that the Individual Defendants did this because paying the bribes were worth more than the costs of any fines by the DOJ or SEC if Tidewater was to be caught. (Doc. 1, ¶109.) Plaintiff also contends that the Individual Defendants ignored, consciously disregarded and/or were reckless in not establishing internal controls that were complaint with the FCPA and its underlying directives. (Doc. 1, ¶110.) Plaintiff alleges that these failures were the result of a conscious decision not to

take action by the board.[3]  As a result, Plaintiff concludes that the Individual Defendants now face a substantial likelihood of personal liability.

The Court finds that these claims are completely conclusory.  There is nothing in the Complaint concerning any alleged scheme such that there was a conscious decision amongst the board members.  Generalized allegations of participation, acquiescence, or approval are insufficient to excuse demand.  *See, e.g., Aronson,* 473 A.2d at 817; *Carauna v. Saligman*, No. 11135, 1990 WL 212304, at *4 (Del. Ch. Dec. 21, 1990); *Werbowsky v. Collomb*, 766 A.2d 123, 143-144 (Md. 2001); *Kaster v. Modification Systems, Inc.*, 731 F.2d 1014, 1018 (2d Cir. 1984); *Gaubert v. Fed. Home Loan Bank Bd.*, 863 F.2d 59, 65 (C.A.D.C. 1988).  Thus, this Court cannot conclude that Plaintiff has met his burden to show that a substantial likelihood of liability for the Individual Defendants in this situation.

Plaintiff further asserts that membership on the Audit Committee is a sufficient basis to infer that demand on the board would have been futile because these Audit Committee members would face a substantial likelihood of liability based on their knowledge of FCPA violations.  The Audit Committee comprised of only five members, certainly not enough to be a majority of the board. Additionally, this assertion is contrary to well-settled Delaware law.  While the Complaint

---

[3]

In *Abbott* the Court distinguished between the board's failure to monitor and the knowing decision not to address certain problems.  *Abbott*, 325 F.3d at 806.  While Plaintiff alleges that the directors' failure to adequately maintain these internal systems is a result of a conscious business decision, in an abundance of caution, the Court also analyzes these allegations under the "inaction exception."  *See* Section II.b, *infra.*

alleges that the members of the Audit Committee "[m]et at least five times during fiscal 2002 and fiscal 2003" where Defendants Madonna and Pattarozzi were present, what is conspicuously absent are particularized facts regarding the actions and practices of the audit committee and the Board's involvement in the preparation and release of the financial information.  Instead, Plaintiff only makes the conclusory allegations that "[u]pon information and belief, at these meetings the Audit Committee Defendants reviewed reports" and that "[t]he Audit Committee Defendants knew or should have known that Tidewater lacked internal controls to prevent payments of bribes."  (Doc. 1, ¶¶115-116.)

"Execution of . . . financial reports, without more, is insufficient to create an inference that the directors had actual or constructive knowledge of any illegality."  *Wood*, 953 A.2d at 142. When a Plaintiff does not allege facts suggesting that the Individual Defendants prepared the financial statements or that they were directly responsible for the misstatements or omissions then this Court cannot reasonably conclude that the Individual Defendants face a substantial likelihood of liability.  *See, e.g., Citigroup*, 964 A.2d at 124 & n.92.; *Wood,* 953 A.2d at 143 (Del. Supr. 2008); *Rattner v. Bidzos*, No. Civ.A. 19700, 2003 WL 22284323, at *12-13 (Del. Ch. Sep. 30, 2003); *Guttman*, 823 A.2d at 507; *Guitierrez v. Logan*, No. Civ. A. H–02–1812, 2005 WL 2121554, at *9–10 (S.D.Tex. Aug. 31, 2005).

Plaintiff also alleges that, while Tidewater's officers and directors are protected against personal liability for acts of mismanagement, waste, and breaches of fiduciary duties, coverage is eliminated for any action brought by Tidewater against the Individual Defendants.  (Doc. 1, ¶133.)

Plaintiff, therefore, concludes that demand on the board would have been futile.  Delaware courts, however, have routinely rejected this argument.  *Freuler v. Parker*, 803 F.Supp.2d 630, 651 (S.D. Tex. 2011) (applying Delaware law).  The Courts have found this "argument to be nothing more than variations on the directors suing themselves and participating in the wrongs refrain." *Caruana*, 1990 WL 212304 at *4 (citing *Decker v. Clausen*, Nos. 10,684 10,685, 1989 WL 133617, at *6 (Del. Ch. Nov. 6, 1989).

This Court cannot conclude from the face of the Complaint that these circumstances are so egregious such that there was a substantial likelihood of liability whereby demand on the board would have been futile.  *See In re Baxter Intern., Inc. S'holder Litig.*, 654 A.2d 1268, 1271 (Del. Ch. 1995).

b) <u>Inaction</u>

In this case much of Plaintiff's allegations stem from the Board's failure to maintain adequate internal controls and compliance systems.  As noted earlier, Plaintiff contends that this failure was the result of conscious decision(s) made by the board.  In an abundance of caution, the Court will also analyze it under the *Rales* "inaction exception."

"Liability to the corporation may be said to arise from an unconsidered failure of the board to act in circumstances in which due attention would, arguably, have prevented the loss."  *In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996).  This class of cases comes from a set of "circumstances in which a loss eventuates not from a decision but, from unconsidered inaction." *Id.* at 968.

"In *Caremark*, Chancellor Allen framed the test as whether the directors 'knew or . . . should have known' about illegality." *La. Mun. Police Emps.' Ret. Sys. v. Pyott*, — A.3d ---, 2012 WL 2087205, at *22 (Del. Ch. June 11, 2012) (citing *Caremark*, 698 A.2d at 971). "In *Stone*, the Delaware Supreme Court tightened the test to require actual knowledge: '[I]mposition of liability requires a showing that the directors knew they were not discharging their fiduciary obligations." *Id.* (citing *Stone ex rel. AmSouth Bank Corp. v. Ritter*, 911 A.2d 362, 370 (Del. 2006)). "A plaintiff following this route effectively must plead facts and circumstances sufficient for a court to infer that the directors knowingly violated positive law." *Id.* (citing *In re Am. Int'l Gp., Inc. Consol. Deriv. Litig.*, 965 A.2d 763, 777, 795 (Del. Ch. 2009). "If the plaintiff cannot point to a decision, then the next alternative is to plead that the board consciously failed to act after learning about evidence of illegality – the proverbial 'red flag'" *Id.* Red flags must be either waved in one's face or displayed so they are visible to the careful observer. *See In re Intel Corp. Deriv. Litig.*, 621 F. Supp. 2d 165, 174 (D. Del. 2009). Ultimately, "[u]nder *Caremark* and its progeny, liability for such a failure to oversee requires a showing that the directors *knew* they were not discharging their fiduciary obligations or that they demonstrated a *conscious* disregard for their duties." *Id.* (emphasis in original).

Plaintiff fails to allege a single particularized fact detailing knowledge as to any particular director. The Complaint merely recites instances whereby certain Individual Defendants, notably not a majority of them, signed financial forms and that audit committee meetings took place. Even taking these as true, nowhere in these allegations is there any indication of a knowing discharge

of their fiduciary duties or a conscious disregard of those duties.

To have a substantial likelihood of director liability on an oversight claim, "a plaintiff must plead the existence of facts suggesting that the board knew that internal controls were inadequate, that the inadequacies could leave room for illegal or materially harmful behavior, and that the board chose to do nothing about the control deficiencies that it knew existed." *Desimone*, 924 A.2d at 940.   The Plaintiff has not alleged any acts to suggest that Tidewater's internal controls were deficient, much the less that the board or the Audit Committee had any reason to suspect that they were so.  "The conclusory allegation that because illegal behavior occurred, internal controls must have been deficient and the board must have known so" has been routinely rejected. *Id.* (quoting *Stone,* 911 A.2d at 373); *see also Freuler*, 2011 WL 2604907 at *15.

Ultimately, the Complaint falls woefully short of pleading facts that are sufficient to show that there was any knowledge or conscious disregard on behalf of the directors.  As a result, the Plaintiff has failed to plead its claim with particularity and demand is not excused.


### IV. The Second Prong of Aronson: Business Judgment Rule

When the directors are disinterested or independent, demand will still be excused under the second prong of the *Aronson* test when a plaintiff pleads particularized facts sufficient to create a reasonable doubt that the transaction is protected by the business judgment rule.  *Levine v. Smith*, 591 A.2d 194, 206 (Del. 1991) (reversed on other grounds by *Brehm v. Eisner*, 746 A.2d 244 (Del. 2000)).  The Courts have noted that this prong of the *Aronson* test is reserved for extreme

cases in which, "despite the appearance of independence and disinterest, a decision is so extreme or curious that it raises a legitimate ground to justify further inquiry and judicial review." *Kahn v. Tremont Corp*, No. 12339, 1994 WL 162613, at *6 (Del. Ch. Apr. 21, 1004); *See also Khanna*, 2006 WL 1388744 at *23; *Highland Legacy Ltd. v. Singer*, No. Civ.A. 1566-N, 2006 WL 741939, at *7 (Del. Ch. Mar. 17, 2006); *Protas v. Cavanagh*, No. 6555–VCG, 2012 WL 1580969, at *9 (Del. Ch. May 4, 2012); *Guttman*, 823 A.2d at 500 (stating that the second prong of *Aronson* is a "safety valve"). The plaintiff must therefore plead "particularized facts sufficient to raise (1) a reason to doubt that the action was taken honestly and in good faith or (2) a reason to doubt that the board was adequately informed in making the decision." *In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 808, 824 (Del.Ch. 2005) (quoting *In re Walt Disney Co. Deriv. Litig.*, 825 A.2d 275, 286 (Del. Ch. 2003) (Disney II)).

As to the first inquiry, "[a] failure to act in good faith requires conduct that is qualitatively different from, and more culpable than, the conduct giving rise to a violation of the fiduciary duty of care (i.e., gross negligence)." *Stone,* 911 A.2d at 369. "The three most salient examples of bad faith are: (1) intentionally acting for a reason other than advancing the best interests of the corporation; (2) acting with the intent of violating applicable positive law; or (3) intentionally failing to act in the face of a known duty to act, demonstrating a conscious disregard of the fiduciary's duties." *Freedman v. Adams*, No. 4199-VCN, 2012 WL 1099893, at *10 (Del.Ch. Mar. 30, 2012)(*citing In re Walt Disney Deriv. Litig.*, 907 A.2d 693, 755-756 (Del. Ch. 2005), aff'd, 906 A.2d 27 (Del. 2006) (Disney IV)).

In relation to the second inquiry, "in making business decisions, directors must consider all material information reasonably available, and that the directors' process is actionable only if grossly negligent." *Brehm*, 746 A.2d 259. Thus, "[t]he board is responsible for considering only material facts that are reasonably available, not those that are immaterial or out of the Board's reasonable reach." *Id.* On the other hand, when the directors consciously and intentionally disregard their responsibilities and adopt a "we don't care about the risks" attitude concerning a material corporate decision, demand on the board will be excused as futile. *In re Walt Disney Co. Deriv. Litig.*, 825 A.2d at 289.

As recited previously, Plaintiff contends that the Individual Defendants: (1) turned a willful and blind eye to bribes paid as a result of a careful and conscious decision that revenues derived by Tidewater were worth more than the costs of any fines (Doc. 1, ¶120); (2) consciously disregarded and/or were reckless in not establishing adequate internal controls despite their actual knowledge that Tidewater was exposed to a high risk of FCPA violations in its operations in Azerbaijan and Nigeria (Doc. 1, ¶121); and (3) that they caused or allowed Tidewater to file materially false and misleading financial forms that resulted in violations of the Exchange Act (Doc. 1, ¶¶125-126). Specifically, with respect to the Azerbaijan bribes Plaintiffs state that "upon information and belief" the decision to make changes to the contract to avoid certain tax assessments came from Tidewater's New Orleans Headquarters. (Doc. 1, ¶47.) Plaintiffs also state that the bribes were disguised as legitimate business expenses and its books and records. (Doc. 1, ¶6.)

25

This Court finds that nothing in the Complaint reveals that the Individual Defendants actions were made in bad faith.  Nowhere in the Complaint are any specific facts concerning any one of the Individual Defendants acting intentionally to advance any agenda that was not in the best interest of Tidewater.  While Defendants Taylor and Bennett did sign the financial statements that contained incorrect information, nowhere can the Court find allegations that Taylor and Bennett knew that false or misleading information was contained therein.  Without this information this Court can only conclude that Taylor and Bennett were acting to the fullest of their duties in advancing the best interest of the corporation as they signed and filed the appropriate paperwork as required under the Exchange Act.

While Plaintiff's allegations are sufficient to show that Tidewater was evidently violating both the FCPA and the Exchange Act, nowhere in the Complaint do Plaintiff's allegations meet the specificity to show that the Individual Defendants were acting with the intent to violate these laws.  "[T]he mere fact that a violation occurred does not demonstrate that the board acted in bad faith."  *Parker Drilling*, 2011 WL 2604907, at *6.  Alleging that "upon information and belief" the "Headquarters" made the decision to avoid tax assessments in violation of the FCPA falls woefully short of the pleading requirements.  Nowhere can this Court find who made this decision, how this decision was made or that there was an intent to violate any law.  Moreover, the Court finds it significant that Tidewater's directors voted and voluntarily initiated an FCPA investigation and advised the federal government of their violations before the government even suspected any violations.  (Doc. 32-7.)

Additionally, "[c]onscious disregard involves an intentional dereliction of duty which is more culpable than simple inattention or failure to be informed of all facts material to the decision." *In re Goldman Sachs Grp., Inc. S'holder Litig.*, No. 5215-VCG, 2011 WL 4826104, at *13 (Del. Ch. Oct. 12, 2011).  This Court finds that a thorough reading of the Complaint could only reveal that the Individual Defendants were inattentive or uninformed.  While Plaintiff complains that they should have been aware that operations in Azerbaijan in Nigeria run a high risk of FCPA violations because ninety percent of its revenues derive from foreign operations, this conclusory statement is insufficient to show that the Individual Defendants intentionally failed to act in the face of a known duty to act or demonstrated a conscious disregard of the fiduciary's duties.

The Court finds that the Plaintiffs have not sufficiently plead that these circumstances are so egregious or extreme such that the business judgment rule does not protect Defendants.  A reasonable doubt has not been raised that the board's actions were not taken honestly and in good faith.  Thus, Plaintiff fails at meeting either prong of the *Aronson* test and therefore demand wass not excused.

### V. Majority

Even if Plaintiff has made satisfactory allegations against certain Individual Defendants, the Complaint as a whole is still insufficient as Plaintiff cannot adequately show that a majority of the board was tainted such that demand would have been futile.

Generally, the Courts require that a majority of the directors be interested before demand

will be deemed futile.  This notion, however, has been rejected when an interested director had the power to prevent the corporation from bringing suit.  *See Beneville v. York*, 769 A.2d 80, 87 (Del. Ch. 2000).  On the other hand, "[a]n allegation that directors are dominated and controlled, standing alone, does not meet the demand futility standard.  There must be some alleged nexus between the domination and the resulting personal benefit to the controlling party." *Highland Legacy Ltd. v. Singer*, No. Civ.A. 1566-N, 2006 WL 741939, at *8 (Del. Ch. Mar. 17, 2006) (citing *Aronson*, 473 A.2d at 816).

Plaintiff must "plead facts specific to each director, demonstrating that at least half of them could not have exercised disinterested business judgment in responding to a demand." *Desimone v. Barrows*, 924 A.2d 908, 943 (Del. Ch. 2003).  A "majority voting power, without more, is not enough to 'strip the directors of the presumptions of independence, and that their acts have been taken in good faith and in the best interests of the corporation." *In re IAC/InterActiveCorp Securities Litig.*, 478 F. Supp. 2d 574, 600 (S.D.N.Y. 2007) (applying Del. law) (quoting *Aronson*, 473 A.2d at 815-816).  Ultimately, "[s]uccessful derivative plaintiffs must focus intensely upon individual director's conflicts of interest or particular transactions that are beyond the bounds of business judgment. The appropriate analysis focuses upon each particular action, or failure to act, challenged by a plaintiff." *Postorivo v. AG Paintball Holdings, Inc.* 2008 WL 553205, at *4 (Del. Ch., Feb. 29, 2008) (citing *In re Info USA, Inc. S'holders Litig.*, 2007 WL 2419611, at *12 (Del. Ch. Aug. 13, 2007)) (internal quotations omitted).

At the commencement of this action, the Board consisted of twelve directors - Dean E.

Taylor ("Taylor"), Rich Pattarozzi ("Patarozzi"), M. Jay Allison ("Allison"), James C. Day ("Day"), Richard du Moulin ("du Moulin"), Morris E. Foster ("Foster"), J. Wayne Leonard ("Leonard"), Jon C. Madonna ("Madonna"), Joseph H. Netherland ("Netherland"), Nicholas J. Sutton ("Sutton"), Cindy B. Taylor ("CB Taylor") and Jack Thompson ("Thompson").   Thus, in order for Plaintiffs to sustain their argument that demand on the board would have been futile, Plaintiff must demonstrate with specific facts as to each director that at least six of these members were either interested, dependent, biased, or tainted.   *See, e.g., Beam*, 845 A.2d at 1046 n. 8 ("If three directors of a six person board are not independent and three directors are independent, there is not a majority of the independent directors and demand would be futile"); *Beneville*, 769 A.2d at 86 ("it makes little sense to find that demand is required in an evenly divided situation").

The Court must make a director-by-director and transaction-by-transaction analysis.  *See Khanna,* 2006 WL 1388744, at *14.   That is nearly impossible to do here as Plaintiff's Complaint is completely devoid of any specific allegations as to any director or board member to show how they may be so interested or non-independent such that demand on them would have been futile. The Individual Defendants are referenced in numerous paragraphs throughout the Complaint. (Doc. 1, ¶¶ 2-6, 32-38, 44, 50-51, 59-61, 64, 66-69, 76-102, 104, 106, 108-111, 119-123, 125-128, 133-134, 136-139, 143-145, 147-149, 151-154, 156-157, 159-161.)   Glaringly missing from the majority of these paragraphs are specific allegations concerning specific directors and the specific transactions.   These generalized and blanket assertions, supposedly relevant to all Independent Defendants, completely disregard the particularity requirements required under Rule 23.1 and the

jurisprudence.

As to nine of the twelve members of the board - Defendants Allison, Day, du Moulin, Foster, Leonard, Netherland, Sutton, CB Taylor and Thompson - Plaintiff mentions their name only one time in the Complaint. As to these nine the Complaint recites the same exact phrase - "[u]pon information and belief, [the director] acquired knowledge of Tidewater's lack of adequate internal controls and the illegal activities alleged in this complaint when he assumed his position with Tidewater.  Despite such knowledge, [the director] failed to address the issues arising and remedy the damages resulting from the illegal activities." (Doc. 1, ¶¶ 18-27.) This allegation containing no particularized facts is the only specific remark concerning any of these nine directors and is certainly not enough to create a reasonable doubt in this Court's mind that any one of these nine was interested, biased, faced a substantial likelihood of liability or was non-independent.

Although Plaintiff clearly cannot reach his burden with respect to nine of the twelve board members, well over the halfway mark, this Court will still address the other three members.  With respect to these members - Taylor, Pattarozzi and Madonna - Plaintiff's allegations still fall woefully short.

Pattarozzi and Madonna are only mentioned in their capacity as participants in audit committee meetings.  (Doc. 1, ¶¶41, 114) ("upon information and belief, the members of the Audit Committee, including Defendants Madonna and Pattarozzi, met at least five times during fiscal 2002 and fiscal 2003.  The Audit Committee Defendants therefore knew or should have known that Tidewater lacked internal controls . . .") Simply alleging that, upon information and belief, Madonna

and Pattarozzi were only present at five Audit Committee meetings from 2002-2006, the time period in which the bribery was taking place, falls extremely short of the specific factual allegations that are needed.  Even if Plaintiff alleged that they reviewed false financial statements, which he has not, this still would not lead the Court to conclude that they were biased, interested or face a substantial likelihood of liability.  *See In re Citigroup S'holder Deriv. Litig.*, 964 A.2d 106, at 134 & n.2 (Del.Ch. 2009).

Taylor is alleged to have signed various 10-K and 10-Q forms throughout the 2002-2007 time period.  These 10-Q and 10-K filings "failed to properly disclose the amounts and purposes of bribe payments made in violation of the FCPA." (Doc. 1, ¶130.) Plaintiff concludes that this means that Taylor is conflicted and that he would face a substantial likelihood of personal liability.  Even taken as true Taylor's one biased vote would not have made demand on the board futile.  While a plaintiff may establish that if one member of the board could have enough power and influence such as to make demand on the board futile, allegations such as these must be plead with particularity.  Plaintiff alleges nothing of this sort, much the less with specificity.

Ultimately, the Complaint falls woefully short of alleging specific facts as to at least six board members that they would be so influenced by interest, bias, non-independence or personal liability such that demand would have been futile.

### VII. Conclusion

In conclusion, for the above stated reasons, this Court cannot hold that demand was not

31

excused.  Neither the Aronson nor the Rales test is satisfied.  Even taking all of Plaintiff's allegations as truth, he has failed to plead with particularity that demand on the board would have been futile. As such, Defendants are entitled to a dismissal of all the claims in the Complaint.

B. AMENDMENT OF THE COMPLAINT

If the Court should find that the Complaint does not adequately state a claim against the Defendants, Plaintiff requests leave to amend his Complaint.  *See* Fed. R. Civ. P. 15(a)(2) (leave to amend "shall be freely given when justice so requires").

Denial of leave to amend "[m]ay be warranted for undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of a proposed amendment." *See Rosenblatt v. United Way of Greater Houston,* 607 F.3d 413, 419 (5th Cir.2010) (citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).  The policy of the federal rules, however, "[i]s to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 -598 (5th Cir. 1981).  "Thus, unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial."  *Id.* citing *Lone Star Motor Import v. Citroen Cars*, 288 F.2d 69, 75 (5th Cir. 1961).

In light of these liberal standards the Court will allow the Plaintiff twenty days to file a Motion for Leave to Amend the Complaint.

**CONCLUSION**

For the foregoing reasons, Nominal Defendant Tidewater, Inc's ("Tidewater") Motion to Dismiss (Doc. 29) is hereby **GRANTED**.  Individual Defendants' Dean E. Taylor, Stephen W. Dick, Joseph M. Bennet, Kevin Carr, R.A. (Rich) Patarozzi, M. Jay Allison, James C. Day, Richard Du Moulin, Morris E. Foster, J. Wayne Leonard, Jon C. Madonna, Joseph H. Netherland, Nicholas J. Sutton, Cindy B. Taylor and Jack Thompson Motion to Dismiss (Doc. 32) is hereby **GRANTED**.

The Court **DISMISSES** this case without prejudice to Plaintiff's ability to move for leave to amend the complaint within **TWENTY DAYS**.

New Orleans, Louisiana this 2nd day of July, 2012.


_____

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**